SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

PATRICIA J. KENNEY (CSBN 130238)
Assistant United States Attorney

    450 Golden Gate Avenue, 9th Floor
    San Francisco, CA 94102
    Telephone: 415.436.6857
    Facsimile:  415.436.6748
    Email: patricia.kenney@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | C 07 5459 |
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | |
| (1) APPROXIMATELY $52,000 IN UNITED STATES CURRENCY, AND (2) APPROXIMATELY $39,000 IN UNITED STATES CURRENCY, | |
| Defendants. | |

### NATURE OF THE ACTION

1. This is a judicial forfeiture action, as authorized by 21 U.S.C. § 881(a)(6), involving the seizure of defendant Approximately $52,000 in United States Currency and defendant Approximately $39,000 in United States Currency which was seized as money furnished or intended to be furnished by a person in exchange for a controlled substance, or money traceable to such an exchange, or money used or intended to be used to facilitate a violation Subchapter I, Chapter 13 of Title 21 United States Code.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a), and 21 U.S.C. § 881(a)(6).

3. Venue is proper because defendant Approximately $52,000 in United States Currency and defendant Approximately $39,000 in United States Currency were seized in the Northern District of California. 28 U.S.C. §§ 1355(b) and 1395.

4. Intra-district venue is proper in the San Francisco Division within the Northern District of California.

## PARTIES

5. Plaintiff is the United States of America.

6. The first defendant is Approximately $52,000 in United States Currency ("defendant $52,000") and the second defendant is Approximately $39,000 in United States Currency ("defendant $39,000").

## FACTS

7. On or about May 22, 2007, DEA received detailed information from a confidential source ("CS") regarding two suspicious travelers, Rama Tirrell MOORE and Ustano McVEY, who were scheduled to arrive later that day at the San Francisco International Airport ("SFO") at approximately 7:35 p.m. on Delta Airlines flight # 69 from Atlanta International Airport ("ATL") in Atlanta, Georgia. MOORE initially made reservations on May 15, 2007 to fly from Oakland International Airport ("OAK") to ATL on May 16, 2007 and to return to OAK May 20, 2007, but that MOORE later changed his return reservation on May 20 to return instead to SFO on May 22, 2007. MOORE paid $1,019 with a credit card for first class seating and paid an extra surcharge for overweight checked luggage (over 50 pounds). McVEY also departed SFO on May 16, 2007 for ATL, but changed his departure flight itinerary three times before leaving SFO on May 16, 2007, and was scheduled to return on May 22 to SFO aboard Delta flight # 69. McVEY paid $882 in cash for economy seating.

8. Based on the training and experience of the DEA agents, Atlanta is a hub city for illicit drugs – a city to which illicit drugs are transported from source cities, such as San Francisco, for subsequent distribution.

9. Special Agent Jay Dial conducted a commercial database search and NCIC check on MOORE. The searches revealed MOORE's residence and California driver's license number.

Complaint for Forfeiture
No. 07-                                  2

1  NCIC revealed that MOORE is a black male, 5'10", 195 lbs, and was born in 1973. MOORE's
2  criminal history included a 1997 felony conviction for possession of a controlled substance in
3  violation of California Health and Safety Code §11350(a) for which he was sentenced to three
4  years probation. In 1998, MOORE was convicted of possession for sale in violation of
5  California Health and Safety Code § 11359(a) and was sentenced to 250 days in jail and three
6  years probation.

7  10. Special Agent Willie Byrd conducted a commercial database search and NCIC
8  check on McVEY. The searches revealed McVEY's residence and California driver's license
9  number. NCIC revealed that McVEY is a black male, 5'9", 180 lbs, black hair, brown eyes and
10 was born in 1970. Records further showed that McVEY had an extensive criminal history
11 including numerous narcotics arrests in California and one conviction in 1991 on charges of
12 possession of cocaine in violation of California Health and Safety Code § 11351.5 for which he
13 was sentenced to three years probation and 60 days jail.

14 11. Passengers began deplaning at approximately 7:34 p.m. from Delta Airline flight
15 #69 at gate C46 at SFO. Agents from DEA Task Force 2 observed MOORE exit the aircraft and
16 immediately sit in the seating area near gate C46. TFA Maes observed MOORE speaking on a
17 cell phone. At approximately 7:40 p.m., agents observed McVEY exit the jet way and approach
18 MOORE. MOORE and McVEY exchanged greetings and began to walk towards the baggage
19 claim area together. MOORE and McVEY were talking as they approached the baggage claim
20 area. McVEY was carrying two paper shopping bags with handles. The shopping bags appeared
21 to contain shoe boxes.

22 12. At approximately 7:45 p.m., Special Agent Jay Dial and Task Force Agent Marty
23 Mahon observed MOORE retrieve a checked rolling type suitcase. S/A Dial and TFA Mahon
24 then approached MOORE near the baggage claim area and identified themselves as law
25 enforcement agents, showed their credentials and conducted a consensual encounter. The agents
26 informed MOORE that he was not in any trouble and was free to go. Upon request, MOORE
27 provided as identification his California drivers license. When asked about his travel, MOORE
28 ///

Complaint for Forfeiture
No. 07-                                              3

1  said that he was in Atlanta to see his girlfriend, Sophia Williams, and that he was there about a
2  week. In response to TFA Mahon's question, MOORE said he was not traveling with anyone.
3       13.    TFA Mahon asked if MOORE had any contraband, illegal drugs or large sums of
4  currency. MOORE initially stated no and then said he flew out with about $7,500, but currently
5  had only $4,000 to $5,000 with him. When asked to show the currency, MOORE retrieved a
6  folded roll of spending money. S/A Dial asked MOORE if he could search his luggage for
7  contraband or large sums of money. MOORE responded by pulling his carry-on bag between
8  himself and S/A Dial, laying the bag down and motioning with his hands toward the bag. S/A
9  Dial asked again whether he could search MOORE's bag. MOORE responded by motioning
10 with his hands toward the bag, and said there you go. While S/A Dial was searching the bag,
11 TFA Mahon asked MOORE if he paid cash for his hotel room in Atlanta. MOORE said yes and
12 later provided a Sheraton hotel receipt in the name of Nicole Ferguson. As an explanation of
13 why the room was reserved in her name, MOORE explained the Nicole Ferguson was able to
14 reserve the room at a discounted price. S/A Dial did not find any contraband in the carry-on bag.
15      14.    S/A Dial then asked to search MOORE's checked luggage. MOORE again
16 responded by motioning with his hands toward the suitcase and then stepped back. S/A Dial then
17 began to search the suitcase and found four pairs of high top basketball shoes in mesh
18 draw-string shoe bags. Under the insoles of each of the eight shoes was large bundle of United
19 Stated currency bound by a rubber band. (As explained below, agents also found in McVEY's
20 possession United States currency packed in a similar manner.) Later, the agents discovered that
21 the eight bundles were broken down into a total of 52 smaller bundles. While S/A Dial was
22 removing the United States currency from the shoes, TFA Mahon asked MOORE again how
23 much money he had with him. This time MOORE responded that he had about $52,000 and that
24 it was given to him by his brother, Lance DUNMORE. MOORE stated the money was for
25 setting up a concert featuring Young Jeezy. MOORE was unable to provide agents with any
26 contact information for his brother, but stated that his brother was about 44 years old. During the
27 interview, S/A Dial noticed MOORE repeatedly shifting his weight from one foot to another.
28 ///

Complaint for Forfeiture
No. 07-                              4

15.     During S/A Dial's search, TFA Mahon again asked if MOORE was traveling with anyone. MOORE again said he was not. TFA Mahon motioned toward McVEY and asked if MOORE knew him. MOORE said that he just met him on the airplane. TFA Mahon asked MOORE if he had been arrested. MOORE stated he had been arrested for possession of marijuana, but would not elaborate as to the circumstances of the arrest or state the quantity of marijuana he had in his possession at the time of the arrest. When TFA Mahon inquired where MOORE worked, MOORE said he was a bartender at Pat's Sports Bar in Oakland. (As explained below, McVEY also said that he worked at Pat's Sports Bar in Oakland – as manager.)

16.     During the search of MOORE's luggage, S/A Dial also found various hotel receipts from Atlanta, Georgia during April and March of 2007. The receipts reflected that the rooms were paid for in cash.

17.     The agents informed MOORE that they were seizing the United States currency pending further investigation. Later, after counting the United States currency, the amount seized was $55,776 in the following denominations: 149 x $100 dollar bills; 57 x $50 dollar bills; 1862 x $20 dollar bills; 71 x $10 dollar bills; 14 x $5 dollar bills; 6 x $1 bills. Defendant $52,000 is part of the $55,776 seized; the remaining $3,776 has been or is in the process of being administratively forfeited. The packaging and denominations of the seized $55,776 are consistent with those used for, or from, the sale of illegal controlled substances.

18.     At approximately 7:46 p.m, TFA Steve Maes observed McVEY walking away from the Delta Airlines baggage carousel towards the outside portion of the baggage area with a cigarette in his mouth. TFA Maes and S/A Byrd both wearing plain clothes approached McVEY from behind, introduced themselves as DEA agents, showed their credentials and conducted a consensual encounter. When asked where he was arriving from and whether he was traveling alone, McVEY said he was coming from "Atlanta" and was traveling alone. McVEY stated he was in Atlanta for 4 or 5 days. McVEY said he was in Atlanta trying to sign a new under-ground hip hop artist. When asked the name of the artist, McVEY stated that TFA Maes wouldn't know the artist because he's not from here (referring to the Bay area). When asked, McVEY provided as identification his airline ticket and his California drivers license in the name of Ostano

Complaint for Forfeiture
No. 07-                                    5

1  McVEY. McVEY told the agents that he is employed as a manager at Pat's Sports Bar in
2  Oakland.
3      19.    TFA Maes asked McVEY if he was carrying any illegal narcotics or large sums of
4  United States currency and McVey responded "No." McVey also responded "No" that he had
5  never been arrested. TFA Maes then asked McVEY if S/A Byrd could search the two paper
6  shopping bags he was carrying, and McVEY responded "Yes." S/A Byrd searched the two
7  shopping bags which contained four shoe boxes, each of which contained a pair of shoes, and
8  found no contraband or currency.
9      20.    In response to whether McVEY had checked luggage, McVEY replied "Yes."
10 TFA Maes and S/A Byrd walked behind McVEY as he returned to the Delta Airlines baggage
11 carousel where McVEY retrieved a large, black roll type American Tourister suitcase. The
12 baggage claim had a number and the name "Ustano McVey." When asked, McVEY said the
13 suitcase was his. In response to TFA Maes question again of whether the agents could search
14 the suitcase, McVEY responded "Yes." McVEY rolled his suitcase away from the baggage
15 carousel to an area that was not crowded, passing MOORE whose luggage was being search by
16 TFA Mahon and S/A Dial. TFA Maes again asked McVEY if he was transporting any illegal
17 narcotics or large sums of United States currency and McVEY responded "No." TFA Maes
18 asked McVEY if he knew MOORE whose luggage was being searched. McVEY said that he
19 knew MOORE from the Atlanta hip hop scene. McVEY stated that he had seen MOORE at the
20 Atlanta airport and also on flight #69.
21     21.    At approximately 7:56 p.m., S/A Byrd located several pairs of "Old Shoe" tennis
22 shoes located at the bottom of McVEY's suitcase. S/A Byrd observed that the in-soles of the
23 shoes were raised and that United States currency was located under the each in-sole. S/A Byrd
24 found a total of eight rubber-banded bundles of United States currency. When asked the source
25 of the currency, McVEY said that he didn't want to talk about it. TFA Maes again advised him
26 that he was not under arrest, but McVEY said he didn't want to state anything that could be used
27 against him in court. TFA Maes again asked how much United States currency was in the
28 suitcase and McVEY responded "I don't want to say anything."

Complaint for Forfeiture
No. 07-                                      6

1  22.  The agents informed McVEY that they were seizing the United States currency
2  pending further investigation. Later, after counting the United States currency, the amount seized
3  was $39,000 in the following denominations: 58 x $100 dollar bills; 38 x $50 dollar bills;
4  463 x $20 dollar bills; 170 x $10 dollar bills; 63 x $5 dollar bills; 25 x $1 dollar bills. The seized
5  $39,000 is defendant $39,000. The packaging and denominations of the defendant $39,000 is
6  consistent with those used for, or from, the sale of illegal controlled substances.

7  23.  At approximately 8:20 p.m., TFA Marty Mahon brought in his certified narcotics
8  detection canine, "Maximus" to conduct a search of an area at SFO where the $39,000 seized
9  from McVEY had been secreted. Maximus alerted to the $39,000 by barking and scratching.
10 This is an indication to TFA Mahon that the odor of narcotics was emanating from the currency.
11 "Maximus" is certified to detect heroin, cocaine, marijuana and methamphetamine. TFA Mahon
12 has handled and trained "Maximus" since May of 2001. "Maximus" has successfully located
13 drugs in over 300 times in past cases and training.

14 24.  At approximately 8:25 p.m., TFA Marty Mahon had his certified narcotics
15 detection canine, "Maximus" to conduct a search of an area at SFO where the $55,776 had been
16 secreted (which included defendant $52,000). Maximus also alerted to the $55,776 by barking
17 and scratching. As stated, this is an indication to TFA Mahon that the odor of narcotics was
18 emanating from the currency.

19 25.  After DEA gave notice of the seizure of the $55,776, Lance DUNMORE filed an
20 administrative claim stating under penalty of perjury that he is the owner of defendant $52,000
21 which was part of the seized $55,776. After DEA gave notice of the seizure of $39,000, McVEY
22 filed an administrative claim stating under penalty of perjury that he is the owner of the
23 defendant $39,000.

24 26.  Due to the totality of the circumstances, defendant $52,000 and defendant $39,000
25 were seized as money furnished or intended to be furnished by a person in exchange for a
26 controlled substance, or traceable to such an exchange, or money used or intended to be used to
27 facilitate a violation of Subchapter I, Chapter 13 of Title 21 United States Code. Specifically,
28 based on the training and experience of the Task Force agents, the totality of the circumstances

Complaint for Forfeiture
No. 07-                                    7

on which the seizure was based included the denominations of and packaging of the currency in multiple bundles with rubber bands, no verification of the source of the currency, the canine positive alerts, the interviews and conflicting statements made by MOORE and McVEY, the manner of travel and purchase of the airline tickets, the knowledge that San Francisco is a source city and Atlanta a hub city for illicit drugs, the number of interdictions in similar situations in the same time frame.

## VIOLATION

27. The United States incorporates by reference the allegations in paragraphs one through 26 as though fully set forth.

28. Section 881(a)(6) of Title 21 of the United States Code, provides for the forfeiture of all money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Subchapter I, Chapter 13 of Title 21 United States Code, all proceeds traceable to such an exchange and all money used or intended to be used to facilitate any violation of Subchapter I, Chapter 13 of Title 21 United States Code.

29. In light of the foregoing, defendant $52,000 and defendant $32,000 are subject to judicial forfeiture.

\* \* \* \* \*

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of defendant $52,000 and defendant $32,000; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that the Court enter judgment forfeiting defendant $52,000 and defendant $32,000; and that the United States be awarded such other relief as may be proper and just.

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

Dated: October 25, 2007

STEPHANIE M. HINDS
Assistant United States Attorney

Assigned to: AUSA Kenney

Complaint for Forfeiture
No. 07-                                         8

|    |                                                                                              |
|----|----------------------------------------------------------------------------------------------|
| 1  | VERIFICATION                                                                                 |
| 2  | I, Willie Byrd, state as follows:                                                            |
| 3  | 1.   I am a Special Agent with the Drug Enforcement Administration Task Force,               |
| 4  | United States Department of Justice, and am the case agent. As such, I am familiar with the  |
| 5  | facts, and the investigation leading to the filing of this Complaint for Forfeiture, including the |
| 6  | reports of investigation generated.                                                          |
| 7  | 2.   I have read the Complaint and believe the allegations contained in it to be true.       |
| 8  | *   *   *   *   *                                                                            |
| 9  | I declare under penalty of perjury that the foregoing is true and correct. Executed this     |
| 10 | on October 25, 2007, in San Francisco, California.                                           |

WILLIE BYRD
Special Agent
Drug Enforcement Administration

Complaint for Forfeiture
No. 07-

9