DAVID M. MICHAEL, CSBN 74031
EDWARD M. BURCH, CSBN 255470
LAW OFFICES OF DAVID M. MICHAEL
101 California Street, Suite 2450
San Francisco, CA 94111
Telephone:   (415) 946-8996
Facsimile:    (877) 538-6220
E-mail:        dmmp5@aol.com

DIANA T. FRAPPIER, CSBN 184048
344 40th Street
Oakland, CA 94609
Telephone:   (510) 428-3939
Facsimile:    (415) 233-4477
E-mail:        esqdiana@comcast.net

Attorneys for Claimant
USTANO K. McVEY

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. C 07 5459 MEJ |
| v. | |
| APPROXIMATELY $52,000.00 IN UNITED STATES CURRENCY, and | **NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF USTANO K. McVEY.** |
| APPROXIMATELY $39,000.00 IN UNITED STATES CURRENCY, | |
| Defendant. | Date: August 21, 2008 |
| _____/ | Time: 10:00 A.M. |
| USTANO K. McVEY, | Courtroom B, 15th Floor |
| Claimant. | |
| _____/ | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES
ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA:

-1-

PLEASE TAKE NOTICE that on the date and at the time indicated above, or as soon thereafter as the matter may be heard, Claimant Ustano K. McVey, by and through counsel, will and hereby does move this Court for an Order suppressing evidence.

The motion to suppress evidence, seized pursuant to the warrantless search of Claimant's luggage on or about May 22, 2007, is made on the ground that Plaintiff will not be able to satisfy its burden of justifying the warrantless search and seizure, and thereby conducted said search in violation of Claimant's rights to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution.

This motion to suppress is based on this notice, the memorandum of points and authorities and declaration filed herewith, on such supplemental points and authorities as may be hereafter filed with this Court or orally presented, on the records and files in this action, and on such oral and documentary evidence as may be presented at the hearing.

Dated: 17 July 2008

Respectfully submitted,


S/DAVID MICHAEL
DAVID M. MICHAEL
DIANA T. FRAPPIER
EDWARD M. BURCH
Attorneys for Claimant USTANO K. McVEY

-2-

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS [1]

On May 22, 2007, an unnamed person, who, in context, is assumely an airline employee[2], alerted Drug Enforcement Administration (DEA) special agent (SA) Willie Byrd of the travel of claimant Ustano K. McVey (Claimant) via telephone. SA Byrd was told that Claimant had departed San Francisco International Airport to travel to Atlanta, GA on May 16, 2007 and Claimant was scheduled to return to San Francisco International Airport on May 22, 2007, on Delta Airlines Flight #69 at approximately 7:45pm. The airline employee "confidential informant", found it suspicious that Claimant had allegedly changed his travel itinerary three times before departing from San Francisco six days previously and allegedly paid for his airline ticket with $882 in cash for economy seating.

SA Byrd conducted a database search on Claimant, and found information as to Claimant's address, date of birth, and physical appearance. SA Byrd also discovered that Claimant had narcotics arrests and a narcotics conviction in California.

On May 22, 2007, at approximately 7:15pm, DEA agents conducted surveillance at San Francisco International Airport at gate C46 where Delta Airlines flight #69 and Claimant were

---

[1] For the purpose of this motion, many of the facts in the Statement of Facts are those taken from the investigative reports of the DEA agents, as recited in the Complaint for Forfeiture. Claimant does not accept the accuracy of such statements, but only presents them for the limited purpose of providing the background and context of the present motion. Claimant has filed, herein, his own declaration, which he submits is, in some aspects, the more accurate and complete version of the events that transpired at the airport on May 22, 2007.

[2] The government agents seek to identify this person as a "confidential informant", apparently to create the impression that said person has some intimate knowledge of criminal activity on behalf of claimant. The most likely reality, though, is that this person is merely an airline employee utilizing an airline's private data base to spot cash transactions, in order to then convey this confidential information to law enforcement officers. Whether such conduct renders these kinds of people as "agents" of law enforcement for Fourth Amendment purposes remains an open issue.

scheduled to arrive. Claimant indeed arrived at said destination at approximately 7:41pm and was observed, by Task Force Agent (TFA) Steve Maes, carrying two paper shopping bags with handles that appeared to contain shoe boxes.

TFA Maes and SA Byrd approached Claimant after he walked outside of the Delta Airlines baggage claim area with a cigarette in his mouth, and identified themselves as being agents from the DEA. TFA Maes and SA Byrd displayed their badges and asked to speak with Claimant, Claimant agreed, and, in response to questioning, confirmed what agents knew about his travel itinerary to Atlanta. Additionally, Claimant said that he was in Atlanta to network and potentially sign a new hip-hop artist, but declined to identify any particular artist. Claimant provided agents TFA Maes and SA Byrd with his airline ticket and driver's license, which confirmed his identity and itinerary. Claimant denied ever having been arrested and told agents that he was not carrying illegal drugs or any large amounts of currency. Agents asked for consent to search Claimant's shopping bags. Consent was given, the search of those shopping bags was conducted and no illegal contraband or currency was found.

The questioning continued as both agents stayed with Claimant as he walked back to the baggage carousel. Agents asked if Claimant had checked any luggage, Claimant responded affirmatively and eventually obtained a black roller suitcase. Claimant intended to then leave the airport with his luggage, but, instead, was directed by the agents to roll his suitcase to an area away from the carousel, to which he complied. At this point, agents asked a number of additional questions, including whether Claimant would consent to an additional search of his checked baggage.[3] Claimant refused to give such consent and refused to answer any more

---

[3] The DEA investigative report alleges that Claimant said "yes" when asked by agents if they could search Claimant's suitcase. Claimant submits otherwise, and Claimant's declaration is provided to this Court as part of the present motion to support this contention. Therefore, the

1
2
3
4
5

questions. At approximately 7:55pm, despite Claimant's refusal, SA Byrd conducted a search of the checked suitcase and its contents. The search led to the discovery of United States currency. Further investigation, not relevant to the present motion to suppress, ensued and eventually resulted in the seizure of said currency as funds allegedly related to narcotics transactions.

6
7
8
9
10
11
12

## ARGUMENT

The Fourth Amendment of the United States constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Claimant and his luggage were detained and searched without a warrant, and in violation of the Fourth Amendment of the Constitution. All evidence obtained as a result of that unlawful search and seizure should be suppressed in the instant matter.

13
14

## I.    CLAIMANT HAS STANDING TO CHALLENGE THE DETENTION, SEIZURE AND SEARCH OF HIS LUGGAGE

15
16
17
18
19
20
21
22
23
24

In order for a defendant to have standing to challenge a search on Fourth Amendment grounds, a defendant must show that under the totality of the circumstances he had a legitimate expectation of privacy in the particular place or item seized.  *See e.g.*, *Rakas v. Illinois*, 439 U.S. 128 (1979); *United States v. Lingerfelter*, 997 F.2d 632, 636 (9th Cir. 1993); *United States v. Singleton*, 987 F.2d 1444, 1447 (9th Cir. 1993).  A person who has a property or possessory interest in the place searched or the items seized, has a legitimate expectation of privacy sufficient to invoke the Fourth Amendment's protections to be free from unreasonable searches and seizures.  *See e.g.*,  *Rakas*, 439 U.S. at 148; *United States v. Padilla*, 508 U.S. 77 (1993).

25
26
27
28

agents' allegations, that they received affirmative consent, among other details of the encounter, is contested and not included in the statement of facts.

In the instant case, Claimant clearly has a sufficient expectation of privacy to assert a violation of his Fourth Amendment rights where he was the person stopped and was clearly the possessor and owner of the luggage that was searched and later seized.

## II.    PLAINTIFF BEARS THE BURDEN OF PROVING THAT THE WARRANTLESS SEARCH AND SEIZURE WERE NOT VIOLATIVE OF THE FOURTH AMENDMENT

It has long been hornbook law that the Fourth Amendment embodies a strong preference for search warrants. See e.g. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968) ("police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure.") (See also *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992)).  In *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932), the Supreme Court stated:

> . . . the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime. . . .

> *Id.*

> A fortiori:

> It is a cardinal rule that in seizing goods and articles, law enforcement agents must secure and use warrants whenever reasonably practicable.... (citations omitted.)  This rule rests upon the desirability of having magistrates rather than peace officers determine when searches and seizures are permissible and what limitations should be placed on such activities.  (Citations omitted.)  In their understandable zeal to ferret out crime and in the excitement of the capture of suspected persons, officers are less likely to possess the detachment and neutrality with which constitutional rights of the suspect must be viewed.

> *Trupiano v. United States*, 334 U.S. 699, 705 (1948) (overruled on other grounds, 399 U.S. 56, 66 (1950))

Although warrantless searches are not absolutely prohibited, deviating from the warrant requirement must be done only in "exceptional circumstances" (See *Johnson v. United States*, 333 U.S. 10, 14 (1948)) and the exceptions to the warrant requirement are "jealously and carefully drawn." *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992), *cert. denied*, 510 U.S. 900 (1993). Thus, the government bears the burden of establishing that a warrantless search and seizure was reasonable and not violative of the Fourth Amendment, based on one of the narrow exceptions to the warrant requirement. *Id.*; *United States v. Delgadillo-Zelasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988).

In the instant case, since the seizure and subsequent search were conducted without a warrant, Plaintiff has the burden of establishing its lawfulness under the Fourth Amendment.

III.     **PLAINTIFF WILL NOT BE ABLE TO SATISFY ITS BURDEN OF SHOWING THAT THE WARRANTLESS SEARCH FALLS UNDER A VALID EXCEPTION TO THE WARRANT REQUIREMENT**

In the present case, Plaintiff will likely argue that the search at issue was lawful as a warrantless search conducted pursuant to some sort of consent by Claimant. However, Claimant disputes that any affirmative consent was given. Moreover, assuming arguendo, that there was some sort of affirmative consent, that consent was not freely and voluntarily given, as it was the result of coercion. Finally, agents impermissibly expanded the scope of any consent when they searched the shoes inside of Claimant's suitcase.

Plaintiff bears the burden of proving that Claimant's "consent, if such consent exists, was, in fact, freely and voluntarily given." See *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (1968). "In order to establish the validity of a consent to search, the government bears the **heavy burden** of demonstrating that the consent was freely and voluntary given*". United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997)(emphasis

-7-

added.), *citing*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Plaintiff here cannot

satisfy their heavy burden.

### a. Claimant Never Gave Express Consent to Search His Suitcase

To satisfy their present burden, Plaintiff must demonstrate that Claimant gave

"unequivocal and specific" consent to search his suitcase. See *United States v. Shaibu*, 920 F.2d

1423, 1426 (9th Cir. 1992). "[E]very encounter has its own facts and its own dynamics," and "so

does every consent." *United States v. Morning*, 64 F.3d 531, 533 (9th Cir. 1995). Determining

whether consent was given in a particular case is a factual inquiry. See *Schneckloth v.

Bustamonte*, 412 U.S. 218, 225-26, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *United States v.

Garcia*, 997 F.2d 1273, 1281-82 (9th Cir. 1993).

> The existence of consent to search is never to be lightly inferred. *United States v.
> Patacchia*, 602 F.2d 218, 219 (9th Cir. 1979). Valid consent must be unequivocal
> and specific, and must be freely and intelligently given. *United States v. Shaibu*,
> 920 F.2d 1423, 1426 (9th Cir. 1990). "The government always bears the burden of
> proof to establish the existence of effective consent." Id.

*United States v. Reeves*, 798 F. Supp. 1459, 1470 (E.D. Wash. 1992)

In *United States v. Shaibu*, *supra,* the Ninth Circuit held that the government failed to

meet its heavy burden in establishing that the defendant gave consent to search a home, and

there, like here, the government had neither a search warrant nor an arrest warrant. *Shaibu*

emphasizes that, in order to find consent, there must be convincing evidence that any waiver of

Fourth Amendment rights is unequivocal and specific.

In *United States v. Reeves*, 798 F. Supp. 1459, 1470 (E.D. Wash. 1992), the court found

that the inconsistency of officers' accounts regarding the phrasing of how the defendant was

asked and responded to a request for consent was enough to find that no consent was given:

> Both Officer Erni and Trooper Ladines testified on the issue of whether the
> Defendant specifically consented to a search of the briefcase. Officer Erni

testified to the following: "We asked [the Defendant] if it would be okay if we looked inside of [the briefcase]. He didn't seem to mind if we did. He didn't say, no, I don't want you to look in there." Trooper Ladines testified that "we asked him whose briefcase it was, and then I believe we said can we look inside it, and he said, no -- I'm sorry -- he said go ahead."

The fact that the Defendant did not respond to the request for consent has little, if any, bearing on whether consent was actually given. As for Trooper Ladines's testimony, it is not only inconsistent with Officer Erni's, it indicates a certain amount of indecisiveness on behalf of Trooper Ladines, which reduces the credibility of his testimony on the subject. As this was the only evidence presented on the issue, the court concludes that **the Government has failed to meet its burden in establishing that the Defendant specifically gave his oral consent to a search of the briefcase** at the time it was discovered."

*Id.* at 1470 (emphases added).

Claimant, herein, unequivocally denies having ever given any consent to search his suitcase. See Declaration of Claimant Ustano K. McVey. The only evidence offered by Plaintiff in the present case that purports to establish that Claimant gave consent is the conclusory language in the DEA investigative report stating that TFA Maes asked Claimant if SA Byrd could search his bag, whereafter, the report claims: "McVey stated 'Yes'." Such a meager showing is surely not convincing evidence of consent, and suggests that no consent was ever given.

### b. Assuming, Arguendo, That Consent was Given, That Consent Was Clearly Not Voluntary and Thus Invalid

"It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary." *Schneckloth*, *supra,* 412 U.S. at 232-33. The question of whether consent was voluntarily given:

... is a question of fact, and its resolution depends on the totality of the circumstances. See *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988). As we said in Castillo:

We have previously indicated that several factors must be considered in determining whether consent is voluntary. None of them are dispositive. These factors include: (1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given;

(4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained ...

In other words, although we have established these factors to aid in the decisionmaking process, the full richness of any encounter must be considered by the district court.

*United States v. Morning*, 64 F.3d 531, 533 (overruled on other grounds)

Plaintiff here "must show that there was no duress or coercion, express or implied" and that the consent was "freely and intelligently given." *Shaibu*, *supra,* 920 F.2d at 1426.  In *Shaibu*, *supra*, the court specified that **coercion is implicit in situations where consent is obtained under color of the badge**.  Submission to authority does not constitute implied or voluntary consent. As *Shaibu* held, "a defendant's failure to object" to officers "is not sufficient to establish free and voluntary consent." *Id.* at 1428.

... we should point out that consents to search are carefully examined for evidence of coercion or duress. This is particularly true in the absence of a written waiver or warnings concerning Fourth Amendment rights. See *United States v. Nikrasch*, 367 F.2d 740, 744 (7th Cir. 1966); *Porter v. Ashmore*, 298 F. Supp. 951, 955 (D.S.C. 1969), rev'd on other grounds, 421 F.2d 1186 (4th Cir. 1970), cert. denied, 402 U.S. 981, 91 S. Ct. 1644, 29 L. Ed. 2d 146 (1971); cf. *United States v. Miller*, 395 F.2d 116, 118 (7th Cir.), cert. denied, 393 U.S. 846, 89 S. Ct. 132, 21 L. Ed. 2d 117 (1968). But see *Byrd v. Lane*, 398 F.2d 750, 754-755 (7th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S. Ct. 625, 21 L. Ed. 2d 564 (1969); *Gorman v. United States*, 380 F.2d 158, 164 (1st Cir. 1967).

Courts have not looked with favor on the practice of substituting consent for the authorization of a search warrant.

*United States v. Dichiarinte*, 445 F.2d 126, n.1 (7th Cir. 1971).

In *United States v. Cuevas-Ceja*, 58 F. Supp. 2d 1175, 1189-1190 (D.Ore.1999), a search based on consent was found invalid in the context of a bus interdiction investigation.  There, despite the fact that passengers were informed that they could refuse consent, the court found that the defendant's "consent to search her baggage was involuntary." *Id*. at 1190. The court explained and held that the "conduct of the officers negated that advisement [of the right of refusal] and conveyed the message that consent was required." *Id*

In the instant case, Plaintiff will not be able to satisfy its heavy burden of proving the validity of any consent to search, even if such a consent was given. Here, the above-mentioned relevant factors and the totality of circumstances weigh heavily in favor of finding that coercion existed: no written waiver was offered or signed and neither TFA Maes nor SA Byrd, nor any other DEA agent administered *Miranda* nor advised Claimant of the right to refuse consent. Further, at the time that consent was allegedly given, the agents' questioning had been ongoing for a lengthy period of time, Claimant's carry on luggage had already been searched, Claimant had been ordered to move to a specified area of the airport not of Claimant's choosing, and Claimant was surrounded by the agents at all times during the encounter. Thus, Claimant was clearly not free to leave and was effectively in the agents' custody. At the very least, the agents' conduct clearly conveyed the message that consent was required.

To reiterate, Claimant unequivocally denies having ever given any such consent to search his suitcase. Regardless, even if the agents' version is believed, the present facts are insufficient to satisfy Plaintiff's burden of showing a non-coerced and thus valid consent. A court must consider the "full richness" and the totality of circumstances of the present encounter. Therefore, any consent that the agents' allegedly received in the present case was not freely, intelligently, and voluntarily given and is violative of the Fourth Amendment's prohibition of unreasonable searches.

**c. Even if Valid Consent to Search the Suitcase Was Given, Agents Impermissibly Expanded the Scope of That Consent With The Search of Claimant's Shoes**

Even if this Court were to find that Claimant gave some form of consent to search his suitcase, which he disputes, Plaintiff nevertheless must overcome its burden of showing, by a preponderance of the evidence, that the search **did not exceed the scope of that consent**. *See United States v. Matlock*, 415 U.S. 164, 171 (1974). Plaintiff, here, cannot overcome its heavy

-11-

burden in this regard, as SA Byrd impermissibly expanded the scope of any alleged consent by searching the shoes within that suitcase, without ever seeking, or obtaining any consent whatsoever for that specific act.

**V.    ALL EVIDENCE OBTAINED AS A RESULT OF AN UNLAWFUL WARRANTLESS SEARCH IS THE "FRUIT OF THE POISONOUS TREE" AND MUST BE SUPPRESSED**

The exclusionary rule operates to prevent the use of evidence obtained as the indirect product of unlawful conduct in the same manner that it precludes the use of evidence directly obtained by improper conduct. *Segura v. United States*, 468 U.S. 796, 804 (1984). This principal has become established as the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States*, 371 U.S. 471 (1963). In the instant case, law enforcement conducted an illegal warrantless detention and search of claimant's luggage. Accordingly, all evidenced adduced as a result of the Fourth Amendment violations must be suppressed.

<u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that this Court find that Claimant's Fourth Amendment rights were violated, and accordingly, exclude all evidence and fruits obtained as a result of the illegal search and seizure of Claimant's luggage.

Dated: 17 July 2008

Respectfully submitted,

S/DAVID M. MICHAEL
DAVID M. MICHAEL
DIANA T. FRAPPIER
EDWARD M. BURCH
Attorneys for Claimant USTANO K. McVEY

//
//
//

-12-

## DECLARATION OF CLAIMANT USTANO K. McVEY
## IN SUPPORT OF MOTION TO SUPPRESS

I, Ustano K. McVey, am the Claimant in the above captioned case, and declare as follows:

1. On May 22, 2007, I arrived at the San Francisco International Airport on Delta airlines flight #69 at approximately 7:30pm. I was returning from Atlanta, GA, where I had spent approximately one week.

2. I had two carry-on bags and one checked black suitcase.

3. I know Rama Moore from the San Francisco Bay Area. I saw him at the airport in Atlanta, on the flight from Atlanta to San Francisco, and I spoke with him after getting off of the plane in San Francisco. I walked with Rama Moore through the concourse and to the baggage claim area.

4. When I arrived at the baggage claim area, my bag had not arrived, so I went outside to smoke a cigarette. When I got outside, I asked a man for a light and he identified himself as an agent from the DEA. A second agent then approached me and identified himself. The agents showed me their badges. At no time did the agents tell me that I was free to leave.

5. The agents asked and I told them about my trip to Atlanta. I mentioned to the agents that I was hoping to sign a hip hop artist while on my trip. The agents asked the name of the artist, but I did not tell them the name of the artist because there wasn't necessarily one particular artist, and I assumed they weren't familiar with hip hop artists from the Atlanta area.

6. The agents then asked and I provided my driver's license and airline ticket.  The agents returned those items to me after inspecting them.

-13-

7. The agents asked me about where I worked. I recall mentioning Pat's Sports Bar in Oakland, because it is one of the venues at which I put on parties and promote artists and events. However, I did not tell the agents that I was a manager at Pat's Sports Bar.

8. The agents then asked if I had ever been arrested. I denied that I had ever been arrested.

9. The agents then asked if I was carrying any illegal drugs or any large sums of currency. I told them I was not. Agents then asked if they could search my shopping bags. I agreed to the search of my shopping bags. One of the agents searched the bags and then that agent returned the bags to me.

10. The agents then asked if I had checked any luggage. I told them that I did.

11. The agents continued to question me and then escorted me as I returned to the baggage claim carousel. The agents never, at any time during the course of these events, told me that I was free to go nor did they indicate how long their questioning would last. I felt as if I had to go with the agents and  speak with them and that I was not free to leave as they made sure to stay with me when I returned to the baggage claim carousel.

12. When my suitcase arrived on the baggage carousel, I grabbed it and prepared to leave the airport.  Instead, the agents continued to stand close to me and, effectively, restrained me from leaving the area.  They both continued to question me and asked if the suitcase I had just retrieved was mine.  I told them that it was.

13. The agents then, standing close to me, requested that I go to another area that was about 20 feet away from the carousel. At no time did they tell me I was free to leave or that I did not have to accompany them to the area they designated me to go to.  I felt compelled to go with them. When we arrived at this area, the agents began asking more questions, such as how I knew

-14-

Rama Moore, which I answered. They also asked me for the second time if I was carrying illegal drugs or large amounts of currency. I again told them that I was not.

14. The agents then asked if they could search my suitcase. At this point, I clearly told the agents that I didn't have anything else to say to them and I didn't want to talk to them anymore. I never gave the agents permission to search my suitcase or its contents. Furthermore, the agents never told me that I had a right to refuse the searching of my bags. In any event, I never gave either of the agents permission to search my suitcase nor to look through any particular contents of my suitcase.

15. The agents seized and searched my suitcase without my permission and found currency that I was carrying with me.

16. The agents then told me that I was not under arrest but that they were seizing my currency. The agents then gave me some sort of receipt for the currency.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge. Executed on 17 July 2008 in San Francisco, CA.


S/USTANO McVEY_____
USTANO K. McVEY
Declarant and Claimant


**ATTESTATION OF COUNSEL**

The undersigned hereby attests, under penalty of perjury, that concurrence in the filing of the within document has been obtained by the above signatory.

Dated: 17 July 2008

S/DAVID M. MICHAEL
DAVID M. MICHAEL
Attorney for Claimant McVey

-15-

**CERTIFICATE OF SERVICE**

I hereby certify that, on 17 July 2008, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

DAVID B. COUNTRYMAN
Office of the United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
david.countryman@usdoj.gov


S/DAVID M. MICHAEL
DAVID M. MICHAEL
Attorney for Claimant McVey